```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

THEODORE JOHNSON                                           CIVIL ACTION

versus                                                     No. 01-2002

STATE OF LOUISIANA, LOUISIANA
DEPARTMENT OF EDUCATION, PRESIDENT
OF THE L.S.U. SYSTEM, BOARD OF
REGENTS and UNIVERSITY OF NEW ORLEANS                      SECTION: E/5

## RULING ON MOTIONS

Plaintiff Theodore Johnson ("Johnson"), proceeding *pro se*, filed suit against defendants alleging various violations of his constitutional, federal statutory and civil rights. Defendants State of Louisiana, Louisiana Department of Education, President of the LSU System and the Board of Regents (collectively "the State") have filed three motions: (1) Motion to Dismiss for Failure to Comply with Court Order and for Lack of Jurisdiction and for Failure to State a Claim upon Which Relief Can Be Granted, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), and 41(b), at r.d. # 48; (2) Motion to Dismiss, or in the Alternative, motion for More Definite Statement, at r.d. # 60; and, (3) Motion to Dismiss, or in the Alternative, motion for More Definite Statement, at r.d. # 73. After review of the pleadings, the memoranda, the record and the law, the court is prepared to rule on the motions.

*BACKGROUND*

The facts of this case are set out in this Court's Order and Reasons entered on January 18, 2002, at r.d. #26, addressing the State's earlier 12(b)(6) motion to dismiss, and at Miller v. Texas Tech Univ. Health Sciences Center, 421 F.3d 342, 345 n.3 (5th Cir. 2005)(*en banc*)[1], *cert. denied*, Louisiana Dept. Of Educ. V. Johnson, 126 S.Ct. 1332 (Feb. 21, 2006).  Johnson filed his initial complaint on July 9, 2001.  R.d. #1.  On August 30, 2001, the State (at that time, the University of New Orleans) filed a motion to dismiss and, alternatively, for a more definite statement.  R.d. #7.  In response, and prior to the Court's ruling on the State's motion, Johnson filed his first amended complaint on September 13, 2001.  R.d. #9.  This Court's Order and Reasons entered on January 18, 2002, at r.d. #26, addressed the State's 12(b)(6) motion to dismiss.

In its Order and Reasons, the Court concluded that Johnson had stated a claim for money damages against the State pursuant to § 504 of the Rehabilitation Act (29 U.S.C. § 794), and for the State's alleged violation of his due process rights pursuant to Art. 1, § 2 of the Louisiana State Constitution of 1974.  The

---

[1] Affirming the district court's Order and Reasons, r.d. #26, entered January 18, 2002.

2

district court dismissed, *inter alia*, his claims for money damages against the State for alleged violations of Title II of the ADA (42 U.S.C. § 12101 et seq.) and his federal civil rights pursuant to 42 U.S.C. § 1983.  The Court observed that Johnson had not, as of January 18, 2002, stated a claim for equitable relief pursuant to Title II of the ADA and § 1983, but that under to the Ex parte Young doctrine, he could amend his petition to state such claims against the President of the LSU System.  *See* Order and Reasons, p. 29 n. 18.  The district court also granted the State's motion for a more definite statement, observing that Johnson had not "specified exactly how defendant's actions violated the statutes or his constitutional rights." Order and Reasons, p. 29. On February 26, 2002, Johnson filed his second amended complaint.  R.d. # 28. The matter remained pending on the Court's docket until February 21, 2006.[2]  The State filed the first of its currently pending motions to dismiss on May 3, 2006, and its second motion to dismiss on May 30, 2006.  Johnson filed his third amended complaint on June 14, 2006 (r.d. # 64), and his fourth amended complaint on July 27,

---

[2]*See* p.2 *supra*, Louisiana Dept. Of Educ. V. Johnson, 126 S.Ct. 1332 (Feb. 21, 2006).

2006 (r.d. #70)[3].  The State responded with its last motion to dismiss on August 2, 2006.

All of the State's pending motions make essentially the same arguments:  (1) that Johnson's complaint should be dismissed because his amended complaints fail to cure the defect cited by the district court in its Order and Reasons, r.d. #26, - that the complaint was so vague that the State is unable to mount a defense; (2) that his amended complaints fail to allege intentional and knowing misconduct as required by § 504 of the Rehabilitation Act, Title II of the ADA and Jackson v. Birmingham Board of Education, 125 S.Ct. 1497 (2005); and (3) that the civil rights claims pursuant to § 1983 and the Louisiana Constitution, and Title II of the ADA should be dismissed because Johnson fails to make a claim for prospective injunctive relief.

### ANALYSIS

Dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) is proper only if the pleadings on their face reveal beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief, or if an affirmative defense or other bar to relief

---

[3] In his fourth amended complaint, Johnson adds claims for violation of articles 3 and 12 of the Louisiana State Constitution and negligent infliction of emotional distress.  These claims are not addressed by the State's motions to dismiss.

appears on the face of the complaint. Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, 354 F.3d 348, 351 (5th Cir. 2003). Moreover, the court must assume that the allegations in plaintiff's complaint are true, and must resolve any doubt regarding the sufficiency of plaintiff's claims in his favor. Jackson v. Birmingham Board of Education, 125 S.Ct. 1497, 1503 (2005).

Motions to dismiss for failure to state a claim are disfavored in the law because the Federal Rules of Civil Procedure "require only 'notice' pleading -- that is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests". Mahone v. Addicks Utility District of Harris County, 836 F.2d 921, 926 (5th Cir. 1988)(citing Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)(quoting Fed.R.Civ.P. 8(a)(2))). However, "dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1991). Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss". Id.

I.

The State argues that none of Johnson's amended complaints have cured the original defect of vagueness, as ordered by the Court in its Order and Reasons of January 18, 2002. It claims that Johnson's complaints should be dismissed for failure to plead the material facts with the particularity required by Elliot v. Perez, 751 F.2d 1472 (5th Cir. 1985). As explained in Elliot, the "particularity requirement" in pleading arises in the context of the defense of qualified immunity.[4] Id. at 1476-82. While the issue of Eleventh Amendment immunity has been settled in this case, the issue of qualified immunity may remain.

In its Order and Reasons, the district court observed that, pursuant to the Ex parte Young doctrine[5], Johnson may amend his original complaint to state a claim for equitable relief against the President of the LSU System. *See* Brennan v. Stewart, 834 F.2d 1248, 1252 (5th Cir. 1988). If he does so, then the President of

---

[4] "Under the qualified immunity standard, government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Elliot, 751 F.2d at 1477 n.13, citing Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982).

[5] Under the Ex parte Young doctrine, sovereign immunity "is no bar to suits for injunctive relief against state officials" for violation of the ADA. Brennan, at 1253 ("[P]rospective injunctive or declaratory relief against a state is permitted ... but retrospective relief in the form of a money judgment in compensation for past wrongs ... is barred,").

6

the LSU System is entitled to assert the defense of qualified immunity. The State argues that Johnson's complaints are subject to dismissal because he has not done so.

In his second amended complaint, filed on February 26, 2002, in addition to compensatory damages, Johnson prayed for "all general, necessary and equitable relief."[6] Second amended complaint, ¶13, page 7. His fourth amended complaint also requested "such other relief as the court deems appropriate and just." Fourth amended complaint, p. 94. His equitable claims are not subject to dismissal. *See* Id., at 1260 ("Although the point is barely raised in the complaint and poorly briefed on appeal, the plaintiff has said enough to preserve his equitable and individual capacity damages claims, if any, under § 504.")  Whether Johnson has pled his case with sufficient particularity is addressed *infra.*

II.

Section 504 prohibits discrimination against "a qualified individual with a disability ... solely by reason of his or her disability" in any program or activity that receives Federal

---

[6]"However, demand of an improper remedy is not fatal to a party's pleading if the statement of the claim is otherwise sufficient to show entitlement to a different form of relief." Doss v. South Central Bell Tel. Co., 834 F.2d 421, 424 n.3 (5th Cir. 1988)(*citing* 5 C.Wright & A. Miller, Federal Practice and Procedure § 1255 (1969)(other citations omitted)).

financial assistance.  29 U.S.C. § 794.  A cause of action is stated under § 504 when a plaintiff alleges that a defendant has refused to provide reasonable accommodations for a handicapped individual.  Scokin v. State of Texas, 723 F.2d 432, 440-41 (5th Cir. 1984).  "Remedies for a violation of section 504 are found in Title VI of the Civil Rights Act of 1964, 29 U.S.C. § 794a(a)(2); a private right of action under Title VI for damages requires intentional discrimination by the defendants."  Id.; Jackson, 125 S.Ct. at 1504.  Intentional discrimination can by inferred by the defendant's deliberate indifference to differential treatment.  Jackson, at id.; Pederson v. Louisiana State University, 213 F.3d 858, 882 (5th Cir. 2000), *citing* Davis v. Monroe County Bd. of Educ., 119 S.Ct. 1661, 1671 (1999)("holding that deliberate indifference to differential treatment between the genders can itself cause discrimination to occur.")

"Section 504 has been construed 'as prohibiting disadvantageous treatment, rather than as mandating preferential treatment.'"  Brennan, 834 F.2d at 1259-60 (citing Wimberly v. Labor & Industrial Relations Comm'n, 479 U.S. 511, 107 S.Ct. 821, 825, 93 L.Ed2d 909 (1987)).  However, while the Supreme Court has made clear that "Section 504 imposes no requirement upon an educational

institution to lower or to effect substantial modifications of standards to accommodate a handicapped person", the federal grantee may, under some circumstances, have *some* affirmative duties. Id., at 1260 (*quoting* Southeast Community College v. Davis, 99 S.Ct. 2361, 2370-71 (1979)).

In contrast to the Rehabilitation Act, Title II of the ADA creates an "affirmative accommodation obligation on the part of public entities" to avoid discrimination against disabled individuals. 42 U.S.C. § 12132. In Bennett-Nelson v. Louisiana Board of Regents, 431 F.3d 448 (5th Cir. 2005), the Fifth Circuit discussed a disabled plaintiff's remedies under Title II of the ADA and § 504 of the Rehabilitation Act as follows:

> As we explained in Pace [v. Bogalusa City School Board, 403 F.3d 272 (5th Cir. 2005)(*en banc*)], the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act.[] *See* 403 F.3d at 287-88. The only material difference between the two provisions lies in their respective causation requirements. *See* id. at 288 (citing Soledad v. U.S. Dept. of Treasury, 304 F.3d 500 (5th Cir. 2002)). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, *solely by reason of her or his disability,* be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity

> receiving Federal financial assistance ...". 29 U.S.C. § 794(a)(emphasis added). By contrast, under Title II of the ADA, "discrimination need not be the sole reason" for the exclusion of or denial of benefits to the plaintiff. Soledad, 304 F.3d at 503-04 (*quoting* Woodhouse v. Magnolia Hosp.,92 F.3d 248, 253 (5th Cir. 1996)).
>
> ....
>
> In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals.[]  Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant.[]
>
> ....
>
> The question is whether the failure to accommodate the disability violates the ADA; and the existence of a violation depends on whether under both the Rehabilitation Act and the ADA the demanded accomodation is in fact reasonable and therefore required.  If the accommodation is required the defendants are liable simply by denying it.

Id., 431 F.3d at 454-55 (footnotes omitted).  The relevant inquiry then is "whether the requested accommodation was 'reasonable' – that is, whether it would impose 'undue financial or administrative burdens' or would require a 'fundamental alteration in the nature of the program'".  Id. at 455 n.12 (citation omitted).

In Taylor v. Principal Financial Group, 93 F.3d 155 (5th Cir.

10

1996), an ADA claim in the employment context, the Fifth Circuit instructed that once an accommodation is properly requested, it is the defendant employer's obligation to participate in an interactive process to determine if a reasonable accommodation can be made.  Id. at 165.  Additionally, "[r]etaliation is, by definition, an intentional act.  It is a form of 'discrimination' because the complainant is being subjected to differential treatment." Jackson, 125 S.Ct. at 173-74, *citing* Olmstead v. L.C., 119 S.Ct. 2176 (1999)(KENNEDY, J., concurring in judgment)(other citations omitted).  As for Johnson's claims pursuant to § 1983 that the State violated his civil rights, violations of federal statutes (such as § 504 of the Rehabilitation Act and Title II of the ADA) give rise to a § 1983 cause of action.  Brennan, 834 F.2d at 1259, *citing* Maine v. Thiboutot, 100 S.Ct. 2502 (1980)(other citations omitted).

   Johnson's complaints state that he was forced to withdraw from school during the spring semester of 2000 because of a medical problem related to his disability; that he was subsequently denied federal financial aid; that his written appeal was ultimately successful, but the appeals committee imposed additional restrictions on his continued receipt of federal financial aid over

11

and above those required by federal regulations:

1. That he successfully complete 75% of the courses he registered for in the Fall 2000 semester;
2. That he attain at least a 2.50 semester G.P.A. for the Fall 2000 semester.

He further states that the 2000 fall semester had already begun by the time he received notification that his appeal was successful and the necessary financial aid was available to him; that as result of his late start, was he was unable to meet the academic requirements imposed (his G.P.A. for the fall semester was 1.97); and that he was then denied financial aid for the spring 2001 semester (the requirement for resumption of federal financial aid was that he pay for the next two years of school and improve his G.P.A.).

Finally, in his third and fourth amended complaints, he alleges that on January 16, 2001, he personally asked for an appeal of the denial of federal financial aid for the spring 2001 semester, and at that time he informed Christine Flug[7] in person that the Financial Aid Appeals Committee was in violation of federal rules and regulations and provided her with a hand written

---

[7] Christine Flug was identified as Associate Vice Chancellor of Enrollment Management (Financial Aid).

copy of 28 C.F.R. § 35.130(a),(b)(3) and (c)[8]. He states that he asked for an accommodation, apparently an opportunity to appeal the denial of financial aid, and she then "took the copies and walked off", and "returned in approximately five minutes and told [Johnson] there would be no accomodation [sic]. The type of accomodation [sic] was never discussed." Fourth amended Complaint, § 23, pp. 52-53; third amended complaint, ¶¶ VI and X.

Johnson alleges that defendants violated § 504 of the Rehabilitation Act and Title II of the ADA by refusing to provide a reasonable accommodation requested by him in consideration of his disability. His account of the facts could be interpreted to suggest retaliation for his complaint to Christine Flug that the

---

[8] 28 C.F.R. 35:130 provides in relevant part as follows:
(a)   No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.
(b)(3)   A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:
   (i)   That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;
   (ii)  That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or
   (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.
(c)   Nothing in this part prohibits a public entity from providing benefits, services, or advantages to individuals with disabilities, or to a particular class of individuals with disabilities beyond those required by this part.

13

UNO Financial Aid Appeals Committee was acting in violation of federal rules and regulations.  The State has not argued that Johnson is not a disabled person within the meaning of the statutes, and there is no dispute that the actions complained of involved the distribution of federal financial aid.

### III.

The Court concludes, assuming as it must that Johnson's factual allegations in his complaints are true, that he has stated a claim against the State under § 504 and Title II of the ADA, and consequently under § 1983, with sufficient particularity to survive the State's motions to dismiss and for a more definite statement.  Although not addressed in the State's motions to dismiss, Johnson's complaints pray for punitive damages.  Punitive damages may not be awarded in suits brought pursuant to Title II of the ADA or § 504 of the Rehabilitation act.  <u>Barnes v. Gorman</u>, 122 S.Ct. 2097, 2103 (2002).

Accordingly,

**IT IS ORDERED** that the State's motions to dismiss and for a more definite statement, r.d. ## 48, 60 and 73, **ARE DENIED**; and

**IT IS FURTHER ORDERED** that Johnson's demand for punitive damages is **STRICKEN.**

New Orleans, Louisiana, August  30th , 2006.

                                 **MARCEL LIVAUDAIS, JR.**
                                United States District Judge