UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THEODORE JOHNSON                                          CIVIL ACTION

versus                                                    No. 01-2002

STATE OF LOUISIANA, LOUISIANA
DEPARTMENT OF EDUCATION, PRESIDENT
OF THE LSU SYSTEM, LOUISIANA BOARD
OF REGENTS                                                SECTION: E/5

## RULING ON MOTIONS

Cross motions for summary judgment are before the court. Plaintiff Theodore Johnson ("Mr. Johnson") filed his motion for summary judgment on March 26, 2007 (r.d. #86); defendants (collectively "the State"), filed a motion for summary judgment on May 3, 2007 (r.d. #89). The motions were considered on the briefs. After consideration of the briefs, the record, the evidence, and the law, the court is prepared to rule.

## BACKGROUND

Mr. Johnson, proceeding *pro se*, filed suit against multiple defendants alleging various violations of his constitutional and civil rights[1]. In its prior Order and Reasons[2], the district court concluded that Mr. Johnson had stated a claim for money damages

---

[1] For procedural background, see this Court's Order and Reasons entered on January 18, 2002, at r.d. #26, addressing the State's 12(b)(6) motion to dismiss, and at Miller v. Texas Tech Univ. Health Sciences Center, 421 F.3d 342, 345 n.3 (5th Cir. 2005)(*en banc*)(affirming the district court's Order and Reasons), *cert. denied*, Louisiana Dept. Of Educ. V. Johnson, 126 S.Ct. 1332 (Feb. 21, 2006).

[2] See n. 1, *supra.*

1

against the State pursuant to Section 504 of the Rehabilitation Act (29 U.S.C. § 794), and for the State's alleged violation of his due process rights pursuant to Art. 1, § 2 of the Louisiana State Constitution of 1974[3]. In it <u>Order and Reasons</u> entered on August 30, 2006, at record document #78, the Court concluded that Johnson had stated a claim for equitable relief pursuant to Title II of the ADA and 42 USC § 1983.

The following facts are undisputed:

1) The rules governing financial aid at UNO, in effect at all times pertinent to this litigation, required that a recipient of financial aid maintain a cumulative grade point average ("GPA") of 2.0 or better.  State's Ex. A.

2) Mr. Johnson's left foot is partially paralyzed due to damage to his sciatic nerve and his left leg is shorter than his right leg, resulting in a limp and limiting his ability to walk. Johnson's motion for summary judgment, pp. 2-3.

3) Mr. Johnson was enrolled at UNO during the Spring 2000 semester when, on the advise of his doctor, he dropped out of school to undergo a surgical procedure.  As a result his GPA for the 1999-2000 academic year was 1.25.  He was informed by letter dated May 26, 2000, that he was no longer eligible to receive financial aid for the Fall 2000 semester.  State's Ex. B, copy of Mr. Johnson's

---

[3] The district court dismissed, *inter alia*, his claims for money damages against the State for alleged violations of Title II of the ADA (42 U.S.C. § 12101 et seq.) and his federal civil rights pursuant to 42 U.S.C. § 1983. See n. 1 *supra.*

appeal; Affidavit of Emily London-Jones, Director of Student Financial Aid at UNO, ¶VI.

4) On June 16, 2000, Mr. Johnson appealed the denial of financial aid for the Fall 2000 semester.  State's Ex. B.  His appeal was approved on August 4, 2000, awarding federal financial aid for the 2000-2001 academic year.  State's Ex. C.  The financial aid for the Spring 2001 semester was expressly conditioned on the following:

1. That he successfully complete 75% of the courses he registered for in the Fall 2000 semester;
2. That he attain at least a 2.50 semester GPA for the Fall 2000 semester.

5) Classes for the Fall 2000 semester began one week before Mr. Johnson was able to begin attending school.  State's Ex. F, copy of Mr. Johnson's appeal for reinstatement of financial aid dated July 30, 2004, p. 1 of Mr. Johnson's hand written letter.  Mr. Johnson attained a GPA of 1.50 for the Fall 2000 semester, and his cumulative GPA dropped to 1.97.

6) In early January 2001, he received an undated "URGENT MESSAGE" from Jennifer Burton, Appeals Committee Chairperson, informing him that because he did not meet the conditions set by the appeals committee for continuation of his financial aid, his Spring 2001 federal financial aid award would be cancelled.  It suggested that to continue his education he find alternative means of funding such as a student loan.  This message further stated:

> If there are extenuating circumstances that directly relate to you not meeting the conditions set forth by the committee, you may

> appeal to be considered for reinstatement for the Spring 2001 semester. The **final deadline to file an appeal** for this semester would be **Tuesday, January 16th.** Appeals must be submitted completely with supporting documentation.

State's Ex. D (emphasis in original). Mr. Johnson did not submit a timely appeal.

7) Mr. Johnson received a letter dated January 16, 2001, singed by Christine Flug, Associate Vice-Chancellor for Enrollment Management (Financial Aid), again informing him that because he did not meet the conditions set by the appeals committee for continuation of his financial aid, his Spring 2001 federal financial aid award would be cancelled, and stating that "There is no possibility for an appeal." It further suggest that he enroll for fewer hours, paying the tuition, to improve his grades so he will again be eligible for financial aid in the future. State's Ex. E; Johnson's Ex. 1.

8) Mr. Johnson claims, and defendants have not denied[4], that he briefly spoke in person with Christine Flug, at which time he requested an unspecified accommodation and handed her two pages, hand written, that cited 28 CFR §§ 35.103(a), 35.130(b)(3) and 35.130(c). Johnson Ex. 2. He claims that she took the papers, left and returned in approximately five minutes when she informed him that "there is no possibility" of an accommodation. Johnson's

---

[4] Defendants do not dispute that a brief face-to-face conversation occurred, but do dispute that Mr. Johnson actually requested an accommodation at that time.

memo, p. 9.

9)  This lawsuit was filed on July 9, 2001.

10)  On July 30, 2004, Mr. Johnson submitted another appeal to the financial aid committee after having been informed by telephone that his request for financial aid for the Fall 2004 semester would be denied as of July 29, but that he could submit an appeal to the committee on July 30.  State's Ex. F.  His handwritten appeal included, at page two, a specific request for accommodation pursuant to the ADA - reinstatement of his financial aid.  He argued that because of the committee's late approval of his appeal in 2000, he was unable to catch up in classes that had begun a week before he could return to school.  He further argued that he cannot pay for tuition because, unlike non-disabled students, he is on a fixed disability income which he will lose if he gets a job to finance his education.  The appeal was denied on August 10, 2004, because he failed to submit any new documentation since his prior appeal was approved in 2000, and because he had not met the stipulations of his previously approved appeal.

## ANALYSIS

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 3d 265 (1986).  An issue is material if its resolution could

affect the outcome of the action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.  *See* Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).  However, once a moving party properly supports a motion for summary judgment, the nonmoving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 311-12 (5th Cir. 1999), *quoting* Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047-48 (5th Cir. 1996).  The nonmoving party cannot satisfy its burden with "unsubstantiated assertions" or "conclusory allegations."  Id.

I.

As the Fifth Circuit explained in Bennett-Nelson v. Louisiana Board of Regents, 431 F.3d 448 (5th Cir. 2005):

> Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, *solely by reason of her or his disability,* be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...". 29 U.S.C. § 794(a)(emphasis added).  By contrast, under Title II of the ADA, "discrimination need not be the sole reason" for the exclusion of or denial of benefits to the plaintiff.  Soledad, 304 F.3d at 503-04 (*quoting* Woodhouse v. Magnolia Hosp.,92 F.3d

6

248, 253 (5th Cir. 1996)).

Id., 454-55 (emphasis in original). "Section 504 has been construed 'as prohibiting disadvantageous treatment, rather than as mandating preferential treatment.'" Brennan v. Stewart, 834 F.2d 1248, 1259-60 (5th Cir. 1988) (citing Wimberly v. Labor & Industrial Relations Comm'n, 479 U.S. 511, 107 S.Ct. 821, 825, 93 L.Ed2d 909 (1987)).  The United States Supreme Court has further held that to be successful in a Section 504 claim, a plaintiff must show intentional discrimination by the defendants.  Jackson, 125 S.Ct. 1497, 1504 (2005).

In contrast to the Rehabilitation Act, Title II of the ADA creates an "affirmative accommodation obligation on the part of public entities" to avoid discrimination against disabled individuals. 42 U.S.C. § 12132; Bennett-Nelson, 431 F.3d at 454-55.  The relevant inquiry is "whether the requested accommodation was 'reasonable' – that is, whether it would impose 'undue financial or administrative burdens' or would require a 'fundamental alteration in the nature of the program'".  Id. at 455 n.12 (citation omitted).

To recover under Section 504, Mr. Johnson must show that he was denied financial aid solely on the basis of his disability, and that in spite of his disability, he was "otherwise qualified" to receive the denied financial aid.  Mr. Johnson alleges that defendants violated Section 504 of the Rehabilitation Act and

Title II of the ADA by refusing to provide a reasonable accommodation requested by him in consideration of his disability.  He argues that he meets the requirements of Section 504 because defendants do not dispute that they receive federal financial assistance; do not deny that he has a disability within the meaning of Section 504[5]; and, that he is "otherwise eligible" because he is eligible to return to UNO at any time but for that school's financial aid policy.  Johnson memo, p. 16.  He supports his argument with Exhibit 3, a form letter dated July 28, 2004, from UNO's Director of Admissions acknowledging that he qualified for re-admission, and Exhibit 4, a form letter dated July 29, 2002, from Gary Froeba, past president of the UNO Alumni Association, congratulating him on his admission to UNO.

Even assuming that Mr. Johnson is disabled within the meaning of Section 504, he cannot show that he is "otherwise qualified" to receive federal financial aid to continue his education at UNO.  Mr. Johnson acknowledges in his pleadings that his failure to make the required grades during the Fall 2000 semester was not the result of his disability, but of his inability to "catch up" when he started classes a week late.  Neither was his late start, as he also acknowledges, caused by his disability, but by the financial aid appeals committee's late

---

[5]The State does dispute that Mr. Johnson is actually disabled within the meaning of Section 504.  The court need not address the argument because, for purposes of these cross motions for summary judgment, it assumes (in Mr. Johnson's favor) that he is disabled within the meaning of Section 504.

notice to him that his appeal had been approved.  He has offered no evidence that the UNO financial aid program imposed upon him, on the basis of his disability, academic standards that are any different that those imposed on all students in order to qualify for financial aid.  Nowhere in the UNO "Satisfactory Academic Progress Policy for Financial Aid/Scholarships" (see State's Ex. A) is there any reference to separate standards for students with disabilities.  The standards, and the process for evaluating students for receipt of financial aid, do not consider a student's disability, or lack thereof, at all.  See Affidavit of Ms. London-Jones, attached to the State's memorandum in support of its motion for summary judgment.

Further assuming that Mr. Johnson did ask Christine Flug for an accommodation, the accommodation requested was reinstatement of his financial aid in spite of his substandard academic performance during the Fall 2000 semester.  According to Ms. London-Jones' affidavit, while UNO has an Office of Disability Services to work with disabled students to assist them, as needed, in maintaining the academic requirements for graduation, reducing the grade point average requirement for receipt of federal financial aid is not an allowed accommodation under the University of LSU System policy.  While the applicable statute[6]

---

[6] See, i.e., 20 U.S.C. § 1091, relating to standards for student eligibility for some forms of financial assistance.

sets minimum academic standards for the receipt of federal financial aid, it does not require that a school lower its academic standards, or conform to different academic standards at other schools, as an accommodation for a disabled student. The accommodation Mr. Johnson requested was not reasonable. There is no dispute that Mr. Johnson may well be eligible to return to UNO as a student; he simply is not eligible to do so with federal financial aid until his GPA improves.

Mr. Johnson's claims against the State for violations of Section 504 of the Rehabilitation Act and Title II of the ADA fail.

## II.

Mr. Johnson claims that the State violated his civil rights when it denied him federal financial aid. Violations of federal statutes such as Section 504 of the Rehabilitation Act and Title II of the ADA gives rise to a Section 1983 cause of action. Brennan, 834 F.2d at 1259, *citing* Maine v. Thiboutot, 100 S.Ct. 2502 (1980)(other citations omitted). Because his Section 504 and ADA claims fail, his Section 1983 claim also fails.

Finally, Mr. Johnson alleges that defendants violated Art. 1, § 2 of the Louisiana State Constitution of 1974, which guarantees due process of law to Louisiana citizens. He argues that defendants violated his due process rights when he was denied an opportunity to appeal the denial of continued financial

aid for Spring 2001.

The Louisiana Constitution due process clause does not offer greater protection against government misconduct than does federal constitutional due process. *State v. Smith,* 614 So.2d 778, 780, (La. App. 2 Cir. 1993). It "embodies the fundamental fairness guarantees inherent in its federal counterpart." *In re C.B.,* 708 So.2d 391, 397 (La. 1998). Mr. Johnson was not denied a right to appeal the financial aid decisions. His first appeal was approved, and when he failed to meet the academic standards required to continue his financial aid, he was given written notice of his right to appeal that determination within a specified time period. He did not timely appeal. His procedural due process rights were not violated.

### CONCLUSION

The court concludes that there is no genuine issue of material fact in dispute, and the State is entitled to summary judgment in its favor as a matter of law. Accordingly, upon considering the complaint and amended complaints, the briefs and reply briefs, the evidence and the law;

**IT IS ORDERED** that plaintiff Theodore Johnson's motion for summary judgment against defendants State of Louisiana, Department of Education, President of the LSU System, and Louisiana Board of Regents is **DENIED;** and

**IT IS FURTHER ORDERED** that defendants' motion for summary dismissing with prejudice all of plaintiff's claims against them is **GRANTED.**

New Orleans, Louisiana, August __9th__, 2007.

_____
**MARCEL LIVAUDAIS, JR.**
United States District Judge